IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Antonio Crawford,               )    Civil Action No.: 8:15-cv-01362-MGL-JDA
                          )
          Plaintiff,  )
                          )
      vs.            )    **REPORT AND RECOMMENDATION**
                          )    **OF MAGISTRATE JUDGE**
Chris Hunt, Sgt.; E. Bittinger, DHO;  )
Tony Smith, Captain; Tracy Sims,    )
Contraband Officer; and David Craig  )
III, Sgt.,                     )
                          )
         Defendants.  )
_____  )

This matter is before the Court on a motion for summary judgment filed by Sergeant

Chris Hunt, Edward Bittinger, Captain Tony Smith, and Officer Tracy Sims  [Doc. 94] and

a motion for summary judgment filed by David Craig [Doc. 95] (collectively referred to as

"Defendants").  Plaintiff is  proceeding pro se and brought this civil rights action pursuant

to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil

Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters

in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the

District Court.

Plaintiff filed this action on March 23, 2015,[1] alleging violations of his Eighth and

Fourteenth Amendment rights against Defendants Chris Hunt ("Hunt") and Edward Bittinger

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, the Complaint was filed on March 23, 2015.  [Doc. 1-2 at 1 (envelope stamped as received by the prison mailroom on March 23, 2015).]

("Bittinger"). [Doc. 1.] Plaintiff, with leave of this Court, amended his Complaint on May 29, 2015, adding Tony Smith ("Smith"), Tracy Sims ("Sims"), and David Craig ("Craig") as Defendants. [Doc. 23.] Hunt, Bittinger, Smith, and Sims filed a motion for summary judgment on November 23, 2015. [Doc. 94.] The same day, Craig also filed a motion for summary judgment. [Doc. 95.] On November 24, 2015, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motions. [Doc. 96.] Plaintiff filed a response in opposition to Defendants' motions on January 4, 2016. [Doc. 98.] Accordingly, the motions are ripe for review.

## **BACKGROUND**[2]

Plaintiff, an inmate incarcerated with the South Carolina Department of Corrections ("SCDC"), was housed at the Kershaw Correctional Institution ("KCI") in Kershaw, South Carolina, when he filed this action under 42 U.S.C. § 1983, asserting violations of his rights under the Eighth and Fourteenth Amendments.[3] [Doc. 23-1.] Plaintiff asserts that on January 13, 2014 around 9:00 a.m., he was on his way to medical for a scheduled sick appointment and passing the administrative building by visitation when contraband officers Sims and Hunt demanded he come inside the visitation room. [*Id.* at 3.] Plaintiff asked

_____

[2] The facts included in this background section are taken directly from Plaintiff's Amended Complaint. [Doc. 23-1.]

[3] Plaintiff has recently been moved to Lieber Correctional Institution, located in Ridgeville, South Carolina. [Doc. 101 (notice of change of address).]

2

what he did wrong, and he was ordered to remove his hands from his pants, to which Plaintiff states he immediately complied. [*Id.*] Plaintiff asserts Hunt then rushed him, picked him up, and carried him into the visitation room, where Hunt placed him in a choke hold. [*Id.*] Plaintiff states that after he was released, Hunt then threw him up against the wall and clipped his feet from underneath him, slamming him on his stomach. [*Id.*] Plaintiff was then placed in handcuffs. [*Id.*] Plaintiff asserts that Smith and Craig witnessed the incident. [*Id.*]

After the incident, Plaintiff was escorted to SMU holding where he was held for fifteen minutes and seen by medical staff. [*Id.*] Plaintiff alleges that the following morning he awoke with a stiff neck and was given pain medication. [*Id.* at 4.] Plaintiff states that his attempt to call Craig as a witness at his disciplinary hearing was denied. [*Id.*]

Plaintiff asserts Defendants violated his Eighth Amendment rights by using excessive force and Defendant Bittinger violated Plaintiff's Fourteenth Amendment rights by denying his right to call Craig as a witness at the disciplinary hearing following the January 13, 2014 incident.[4] [Doc. 23-1 at 5.] Plaintiff seeks compensatory and punitive damages. [*Id.* at 6.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his

---

[4] The Court has construed Plaintiff's claims as alleging excessive force against Hunt and failure to protect against Smith, Sims, and Craig.

3

pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

4

suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional

5

deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

6

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue Plaintiff has failed to establish he is entitled to relief on his § 1983 claims; Plaintiff has failed to submit evidence of injury suffered as a result of Defendants' alleged actions; Defendants are entitled to qualified immunity; and Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. [Docs. 94; 95.]

**Eleventh Amendment Immunity**

To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed

8

because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

**Excessive Force Claim Against Defendant Hunt**

Defendants argue Plaintiff has failed to establish an Eighth Amendment excessive force violation against Hunt and that Hunt is entitled to qualified immunity. [Doc. 94 at 6–13, 16–17; Doc. 95-1 at 5–12.]

"The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials . . . [,] forbid[ding] 'the unnecessary and wanton infliction of pain.'" *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)). To establish a constitutional excessive force claim, an inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component) and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996)).

"[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Iko*, 535 F.3d at 239 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Supreme Court has set forth the following four non-exclusive factors to be considered when analyzing the subjective component of an excessive force claim:

(1) "the need for the application of force"; (2) "the relationship

9

between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321 ("the *Whitley* factors")).

Here, it is undisputed that on the morning of January 13, 2014, while walking past the administration building by visitation at KCI, Plaintiff was ordered by Hunt to remove his hands from his pants. Plaintiff contends he complied with the order and removed his hands immediately. [Doc. 23-1 at 3.] Plaintiff alleges that after he complied, Hunt rushed him, carried him to the visitation room, placed him in a choke hold, threw him against the wall, and clipped his feet from under him slamming him to his stomach. [*Id.*] Hunt avers that Plaintiff refused to comply with Hunt's multiple directives for Plaintiff to remove his hands from his pants, thus creating a security threat to officials; therefore, when Plaintiff got close enough to Hunt and jerked his arms upward in a threatening posture, Hunt secured Plaintiff's arms to his side and escorted him inside the visitation area. [Doc. 94-2.] Hunt states he placed Plaintiff against a wall when inside the visitation room and attempted a pat down search. [*Id.*] Hunt asserts that rather than comply with his directive to remain standing against the wall, Plaintiff tensed his arms in a threatening posture so Hunt performed a straight-arm take down in order to place Plaintiff on the ground to be handcuffed. [*Id.*; 94-3.]

According to the incident investigation report, Craig reported:

Hunt forcefully put [Plaintiff] on the floor and handcuffed him. . . Craig reported that he had seen Sgt. Hunt throw [Plaintiff] against the wall and then take him to the floor to be handcuffed. Sgt. Craig stated that during this time the inmate showed no signs of aggression and was mild mannered. Craig stated that he thought the actions of Sgt. Hunt were uncalled

10

for . . . .

[Doc. 94-5 at 3.] Craig acknowledged, however, that he did not witness the events leading up to the use of force by Hunt. [*Id.*] It appears that after making a statement that the incident in question amounted to an excessive use of force, Craig resigned. [*See* Doc. 98-4.]

Considering the first and second *Whitley* factors, based on the evidence presented, the Court finds that a question of fact remains as to whether there was sufficient need for application of force under prong one of *Whitley*. Further, a question of fact remains as to whether an unreasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*. Thus, the first two *Whitley* factors weigh in favor of Plaintiff.

With respect to the third and fourth *Whitley* factors, the undersigned must consider the extent of any threat posed by Plaintiff to the staff or other inmates, as reasonably perceived by Hunt based on the facts known to him at the time, and what Hunt did to temper the severity of the force applied. The record indicates that, in response to a tip that cell phones were being exchanged between visitors and inmates, Hunt and Sims were positioned outside the visitation room and were patting down inmates as they walked near the area. [Docs. 94-2; 94-3.] Plaintiff asserts he complied with Hunt's directives, and when directed to remove his hands from his pants, he did so immediately. [Doc. 23-1 at 3.] Further, according to Craig, Plaintiff "showed no signs of aggression and was mild mannered." [Doc. 94-5 at 3.] However, it appears Craig did not witness the initial encounter between Plaintiff and Hunt or whether Plaintiff complied with Hunt's initial directive to remove his hands from his pants. [*See id.*] Defendants note that while in

11

SCDC custody, Plaintiff has received fifty-three disciplinary infractions, including possession of a weapon, refusing to obey orders, and possession of contraband. [*See* Doc. 94-1.] Defendants argue Plaintiff's failure to comply with Hunt's directive to remove his hands from his pants substantiated the need for force that was minimal in scope and necessary to help secure Plaintiff after he presented officers with a perceived threat. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill*, 727 F.3d at 328 n.3 (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification"). The record, construed in light most favorable to Plaintiff, indicates Plaintiff did not present any theat at the time of the incident. Accordingly, genuine issues of material fact remain regarding the third and fourth *Whitley* factors, and these factors weigh in favor of Plaintiff.

For the reasons discussed, the Court finds that each of the *Whitley* factors presents genuine issues of material fact as to whether Hunt acted with the subjective intent necessary to sustain an Eighth Amendment excessive force claims–the malicious and sadistic use of force to cause harm.

Turning to the objective inquiry of an excessive force claim, which "focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins*, 559 U.S. at 39)). Clearly, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

12

constitutional recognition de minimis uses of physical force, provided that the force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley*, 475 U.S. at 327). As such, "[a]n inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9). Nonetheless, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.*; *see also Hill*, 727 F.3d at 321 ("[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry.").

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9 (citation omitted). "This is true whether or not significant injury is evident." *Id.* Here, Plaintiff alleges the use of excessive force resulted in a neck injury. Plaintiff states he immediately sought medical assistance after the incident, and records indicate that Plaintiff was seen several times for neck complaints. [*See* Docs. 94-4; 95-5.] Because of the question of fact regarding whether Hunt maliciously and sadistically used force to cause harm, the Court finds a genuine issue of material fact exists concerning the objective inquiry for Plaintiff's Eighth Amendment excessive force claim.

The Court thus finds genuine issues of material fact remain as to both the subjective and objective inquiries for an Eighth Amendment excessive force claim. Consequently, the Court recommends Defendants' motions for summary judgment be denied on Plaintiff's excessive force claim against Defendant Hunt in his individual capacity.

**Fourteenth Amendment Claim Against Defendant Bittinger**

Defendants further allege that Bittinger did not violate Plaintiff's due process rights under the Fourteenth Amendment, and therefore, Plaintiff's due process claims should be

13

dismissed.  [Doc. 94 at 13–16.]

The Supreme Court has outlined the procedural due process safeguards required during disciplinary proceedings where good-time credits will be revoked or isolation imposed.[5] *See Wolff v. McDonnell*, 418 U.S. 539 (1974).  In *Wolff*, the Court stated that to take away statutory good-time credits or to place a prisoner in solitary confinement, the following minimum procedural safeguards must be met: (1) advance written notice of charges, (2) written findings, and (3) generally, the right to call witnesses. *Id.* at 563–66. At issue in this case is the right to call witnesses.

An inmate facing disciplinary proceedings has the qualified right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.  The right to call witnesses is qualified because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*  Accordingly, *Wolff* "clearly established that prison officials [have] the discretion to deny witness requests, where legitimate penological interests [justify] excluding a witness." *Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004).

Here, following the January 13, 2014 incident, Plaintiff was charged with refusing and failing to obey orders.  [Doc. 94-6.]  Plaintiff argues that his due process rights were

---

[5] The Disciplinary Report and Hearing Record shows that the sanctions imposed on Plaintiff for refusing to obey orders included a loss of six days of good-time credit.  [Doc. 94-6 at 4.]

violated when he was not permitted to call Craig as a witness at his disciplinary hearing. [Doc. 23-1 at 4–5.] It appears Craig's testimony that Hunt's actions were uncalled for and excessive, and that Plaintiff showed "no signs of aggression" and was "mild-mannered" would have been advantageous at Plaintiff's disciplinary hearing. [*See* Docs. 94-5; 98-1; 98-4.] Defendants assert that because Plaintiff refused to sign the Disciplinary Hearing Form 19-69 when it was served on Plaintiff on January 17, 2014, Plaintiff waived his right to call Craig as a witness at his disciplinary hearing. [Doc. 94-6.] Citing SCDC Policy and Procedure OP-22.14 (7.1), Defendants explain that "if the 19-69 is not signed by the Inmate then the Inmate waives the right to call witnesses and to be confronted by their accuser during the disciplinary hearing." [*Id.*] Further, Defendants state "Inmates are generally aware of this policy, OP-22.14 is a Non-Restricted Policy and is available for review in the law library at KCI, and the ramifications of not signing the form (e.g. not having witnesses or being allowed to cross examine a witness, etc.) are noted on the form itself." [*Id.*] Plaintiff counters that he signed the papers on January 17, 2014, the day the papers were served. [Doc. 23-1 at 4– 5.]

It is undisputed that Plaintiff was given advance written notice of the disciplinary hearing, received written findings, and was not allowed to call Craig as a witness. It is disputed, however, whether Plaintiff signed the charging document, Form 19-69, on January 17, 2014. [*See* Doc. 94-6 at 4 (noting inmate refused to sign charging paper on 1/17/14, but also showing Plaintiff's signature on charging paper, dated "01/17/14").] Defendants assert that the requirement that inmates sign the disciplinary hearing form in

order to be able to call witnesses serves security and safety interests.[6] [Doc. 94 at 15.] In the facts of the present case, however, calling an officer as a witness does not present the same safety concerns as calling inmates as witnesses; thus, whether there was a legitimate penological interest for refusing Plaintiff's witness is also disputed. Because genuine issues of material fact remain as to when Plaintiff signed the charging document, thus allegedly waiving his right to present witnesses at the disciplinary hearing, whether Plaintiff knew not signing Form 19-69 negated his right to call witnesses at the disciplinary hearing, and whether there was a legitimate penological interest for refusing Plaintiff's witness, the Court recommends Defendants' motions for summary judgment be denied as to Bittinger in his individual capacity.

**Failure to Protect Claim Against Defendants Sims, Smith, and Craig**

Plaintiff also appears to allege Sims, Smith, and Craig witnessed the incident and failed to protect him from the alleged attack by Hunt. [Doc. 23-1 at 3.] Defendants argue that Plaintiff has failed to set forth a claim against any defendant for a failure to protect Plaintiff from any alleged assault or use of force.

The Eighth Amendment's prohibition on "cruel and unusual punishments" imposes certain basic duties on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These include maintaining humane conditions of confinement, including the provision of adequate medical care and, relevant to this case, "reasonable measures to guarantee the

---

[6] According to Bittinger's affidavit, the ramifications for not signing the Form 19-69, including not being permitted witnesses, are noted on the form itself. [Doc. 94-6 ¶ 7.] The Court notes that no such notation exists on the attached Form 19-69. [*Id.* at 4.] Further, it appears Plaintiff was not aware that an inmate's failure to sign the charging form would negate his right to call witnesses. [*See* Doc. 94-6 at 6.]

16

safety of the inmates." *Id.* (internal quotation marks omitted). Corrections officers have "a duty to protect prisoners from violence at the hands of other prisoners," for "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 832, 834 (internal quotation marks and alterations omitted). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation marks omitted). A plaintiff must satisfy a two-part test; as in the preceding claim, the test consists of both an objective and a subjective inquiry for liability to attach.

First, the inmate "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury," or a substantial risk thereof. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (internal quotation marks omitted); *see Farmer*, 511 U.S. at 834. This objective inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Second, an inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, consists of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003). This subjective inquiry requires "evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser*, 772 F.3d at 347. The defendant must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. An inmate

17

can, however, prove an official's actual knowledge of a substantial risk "in the usual ways, including inference from circumstantial evidence." *Id.* at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Ultimately, the Court must determine whether Sims, Smith, and Craig were deliberately indifferent to a serious risk of physical harm to Plaintiff.

Here, Sims was present inside the visitation room when the alleged assault by Hunt occurred; thus, it appears Sims may have witnessed the entire incident. [Doc. 94-3.] Craig witnessed Hunt "forcefully put Plaintiff to the floor" and handcuff him. [Doc. 94-5 at 3.] Smith states he cannot recall the incident. [Doc. 94-1.] It is not contested that during the alleged incident, Sims, Smith, and Craig did not attempt to assist Plaintiff, nor call for assistance. Unlike the above excessive force claim that may be sustainable whether or not significant injury is evident, only an extreme deprivation, that is, a serious or significant physical or emotional injury or substantial risk thereof, will satisfy the objective component of an Eighth Amendment failure to protect claim. *Danser*, 772 F.3d at 346–47. Even construing the pleadings in Plaintiff's favor, and accepting Plaintiff awoke on January 14, 2014 with a stiff neck, Plaintiff cannot meet this showing. [*See* Docs. 94-4; 95-5 (medical records indicating mild neck soreness).] Moreover, absent any evidence set forth by Plaintiff that Sims, Smith, and Craig possessed a sufficiently culpable state of mind, Plaintiff's failure to protect claim cannot surmount the Eighth Amendment's "high bar to recovery." *Iko*, 535 F.3d at 241. Consequently, the undersigned finds Defendants' motions for summary judgment should be granted as to Plaintiff's failure to protect claims.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Docs. 94 at 16–17;

95-1 at 10–12.]  The Court agrees, in part.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed in the preceding claim, Plaintiff's allegations fail to demonstrate Sims, Smith, and Craig violated Plaintiff's constitutional rights. Therefore, the Court finds Sims, Smith, and Craig are entitled to qualified immunity. However, as discussed above, because this matter must await determination of the facts now in conflict as to Plaintiff's excessive force claim against Hunt, and as to Plaintiff's Fourteenth Amendment due process claim against Bittinger, qualified immunity as set forth in *Harlow* is inappropriate for Hunt and Bittinger in their individual capacities.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Craig's motion for summary judgment [Doc. 95] be GRANTED. It is further recommended that Hunt, Bittinger, Smith, and Sims' motion for summary judgment [Doc. 94] be GRANTED IN PART and DENIED IN PART. This motion should be GRANTED except as to (a) the individual

capacity Eighth Amendment excessive force claim against Hunt and (b) the individual capacity Fourteenth Amendment due process claim against Bittinger.  If this Report and Recommendation is adopted by the District Judge, it is also recommended counsel be appointed for Plaintiff for the trial of this action.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 2, 2016
Greenville, South Carolina